```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION


FREDERICK L. FELDKAMP; JUDITH L.
FELDKAMP,

                   Plaintiffs,

vs.                                  Case No. 2:09-cv-253-FtM-29SPC

LONG BAY PARTNERS, LLC a Florida
limited liability company,

                   Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss the Second Amended Complaint and Memorandum of Law in Support Thereof (Doc. #72), filed on April 9, 2010. Plaintiffs filed a Response on April 23, 2010 (Doc. #75). Plaintiffs' Second Amended Complaint (Doc. #70) alleges claims for declaratory judgment, breach of contract, unjust enrichment, and violation of the Florida Uniform Fraudulent Transfers Act ("FUFTA"). Federal jurisdiction is premised upon diversity of citizenship.

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right

to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). See also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). The former rule--that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)--has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The Court need not accept legal conclusions or mere conclusory statements as true. Id.

**II.**

In April 2005, plaintiffs Frederick L. Feldkamp and Judith L. Feldkamp ("plaintiffs" or "the Feldkamps") entered into a contract to purchase a lot and home from defendant Long Bay Partners, LLC ("defendant" or "LBP"). (Doc. #70, ¶ 7.) As an incentive to purchase this property, plaintiffs received a certificate redeemable for a $30,000 credit towards a $92,000 resident golf membership at Shadow Wood Country Club ("Shadow Wood"). (Doc. #70, ¶¶ 8, 10.) This certificate was redeemable for three months from

the date of the contract to purchase the property, in this case July 15, 2005. (Doc. #75-1, Exhibit A.)

On July 14, 2005, the Feldkamps signed an Application for Resident Golf Membership (the "Application") at Shadow Wood. (Doc. #70, ¶¶ 9-10; Doc. #75-1, Exhibit A, p. 5.) The Application provided in relevant part:

-Shadow Wood Country Club (the Club) was a private club owned and operated by LBP, a Florida limited liability company. (Doc. #75-1, Exhibit A, p. 3, ¶2.)

-Membership in the Club was contingent upon approval by the Club. (Id. at p. 2, ¶ 1.)

-Plaintiffs' "membership privileges will be subject to the terms and conditions of the Club Membership Plan and Rules and Regulations, which I acknowledge receipt of (the Membership Plan)." (Id. at p. 3, ¶ 2.) No mention was made of membership privileges being subject to an amended Membership Plan.

-Plaintiffs acknowledged that membership was not an investment in the Club, does not provide any equity ownership in the Club or Club Facilities, and does not confer a vested or prescriptive right or easement to use the Club Facilities. (Id. at p. 3 ¶ 2.)

-LBP reserved the right to convert the Club to a member-owned club. (Id. at p. 3, ¶¶ 2, 3.)

-Plaintiffs may resign from the Club by giving advance written notice to the Club "in accordance with the terms and conditions as the Club my require from time to time."  (Id. at p. 4, ¶ 5.)

-"One hundred percent (100%) of the membership deposit paid by a member will be refunded, without interest, by the Club to the member within 30 days after providing written notice of resignation to the Club, without having to be placed on any waiting list to receive a refund."  (Id. at p. 3, ¶ 4.)

-"I hereby acknowledge receipt of the Shadow Wood Country Club Membership Plan and the Rules and Regulations and agree to be bound by the terms and conditions thereof as the same may be amended from time to time by the Club or LBP and irrevocably agree to fully substitute the membership privileges acquired pursuant to the Club Rules and Regulations for any present or prior rights in or to use of the Club Facilities."  (Id. at p. 4, ¶ 8.)

-Plaintiffs stated they understood the acceptance for membership was subject to approval by the Club and LBP and payment of required deposit, dues and charges.  (Id. at p. 4, ¶ 8.)  The Application was approved and accepted by LBP on the same day, along with a $62,000 deposit.  (Doc. #75-1, Exhibit A, p. 5; Doc. #70-2.)

On July 19, 2005, LBP mailed plaintiffs the Club Membership Plan (the "Plan") and Rules and Regulations (the "Rules") and three proposed addenda (Doc. #70-4). The Membership Plan provided in part:

-"If a Resident Golf Membership is purchased within 90 days of contract date for a new lot or home, you will receive one hundred percent (100%) of the membership deposit within 30 days after resignation, as provided for in this Membership Plan." (Doc. #75-1, p. ii.)

-"Each person who desires to acquire a membership will be required to pay a refundable membership deposit and a non-refundable initiation fee determined by the Club from time to time. Membership deposits are refundable only in accordance with this Membership Plan, the Rules and Regulations of the Club and the Application for Membership. The required membership deposit and initiation fee must be paid in full upon application to the Club." (Id. at p. 6.)

-New lot/home buyers who choose to purchase the Golf Membership with 90 days of the contract on their home or lot "will receive a refund of 100% of their membership deposit within 30 days of written notice of resignation to the Club." (Id. at p. 6.)

-"Membership in the Club permits the member to use the Club Facilities in accordance with the Membership

> Plan and the Rules and Regulations, as they may be amended from time to time." (<u>Id.</u> at p. 10.)
>
> -"A member only acquires a revocable license to use the Club Facilities. The Club reserves the right, in its sole discretion, to terminate or modify this Membership Plan and Rules and Regulations, . . . and to make any other changes in the terms and conditions of membership or in the Club Facilities available for use by members." (<u>Id.</u> at p. 10.)
>
> -"If approved for membership in the Club, the member agrees to be bound by the terms and conditions of this Membership Plan and the Rules and Regulations of the Club, as amended from time to time, and irrevocably agrees to fully substitute the membership privileges acquired pursuant to this Membership Plan and Rules and Regulations for any present or prior rights in or to use of the Club Facilities." (<u>Id.</u> at p. 11.)

The Rules and Regulations (Doc. #75-1) provided in pertinent part:

> -"The Club may amend these Rules and Regulations from time to time." (Doc. #75-1, p. 1.)
>
> -"A member may resign their membership in the Club by delivering written notice of resignation to the Club's Administrative Office. A membership shall be deemed to have been resigned as of the date the Club receives

written notice of the member's resignation." (Id. at p. 5.)

On July 25, 2005, plaintiffs signed an Addendum to Application for Membership (Doc. #70-6, p. 5), which provided that plaintiffs understood "that the membership deposit I paid to join the Club in the category above will be refunded according to the Membership Plan, without interest upon the earlier of the following: (a) thirty years after the date the membership is issued by the Club, or (b) within thirty days after written notice of resignation of the membership is delivered to the Club." Plaintiffs also stated that they requested the membership, including the right to receive the refund, be owned by Judith L. Feldkamp and Frederick L. Feldkamp.

LBP also requested plaintiffs to sign an Addendum to Application for Credit Toward Membership which included the following provision:

> "I understand that because the $30,000 credit toward membership deposit was paid for me by others, the $30,000 credit amount is not refundable to me upon resignation, prior to conversion. The additional amount I pay for the Membership (the difference between the $30,000 credit and the Membership Deposit) will be refundable as provided in my Application for Membership and the Membership Plan. I further understand that I am not ever entitled to a refund of the non-refundable Initiation Fee."

Plaintiffs refused to sign the form as is. On August 1, 2005, plaintiffs modified the form by crossing out the above provision and signing it. (Doc. #70-6, p. 4.)

On November 13, 2006, plaintiffs completed the purchase of the property. (Doc. #70, ¶ 26.) LBP accepted plaintiffs' membership dues payments until March 31, 2009. (Doc. #70, ¶ 25.) At that time, plaintiffs provided written notice of their resignation from the Club to defendants, effective in 30 days. Plaintiffs requested refund of the $92,000, less any offset. (Doc. #70, ¶ 32.) LBP refused, asserting it had the authority to unilaterally suspended the refund policy and had done so. (Doc. #70, ¶¶ 30, 34.)

### III.

Defendants' motion to dismiss argues that Counts I, II, III and IV of the Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because each count fails to state a claim upon which relief may be granted. (Doc. #72, p. 2.) Plaintiffs argue to the contrary on each count.

**A. Count I: Declaratory Judgment**

Count I is an action for declaratory judgment pursuant to 28 U.S.C. § 2201(a). (Doc. #70, ¶ 37.) Plaintiffs allege that defendant asserts a right to unilaterally amend the refund policy, which is an incorrect interpretation of the contract and would render the contract illusory and unenforceable. Plaintiffs seek a declaration of their rights regarding the refund under the contract.

The Declaratory Judgment Act states that "[i]n a case of actual controversy" a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought." 28 U.S.C. § 2201(a). An "actual controversy" requires a "definite and concrete" controversy. Miccosukee Tribe of Indians of Florida v. Kraus-Anderson Const. Co., 607 F.3d 1268, 1275 n.14 (11th Cir. 2010), citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937). The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed. R. Civ. P. 57. "As a result, the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions, . . .." Thomas v. Blue Cross and Blue Shield Ass'n, 594 F.3d 823, 830 (11th Cir. 2010)(internal citation and quotation omitted).

Federal jurisdiction for this declaratory judgment action is based on diversity jurisdiction, and therefore state law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress. Mid-Continent Cas. Co. v. American Pride Bldg. Co., LLC, 601 F.3d 1143, 1148 (11th Cir. 2010), citing 28 U.S.C. § 1652; Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Here, Florida law applies. Dew Seven, LLC v. Big Lots Stores, Inc., 354 Fed. Appx. 415 (11th Cir. 2009). As in state court, "'[a] motion to dismiss a complaint for declaratory judgment is not a motion on the merits. Rather, it is a motion only to determine whether the plaintiff is entitled to a declaration of its rights, not to whether it is entitled to a declaration in its favor.'" Royal Selections, Inc. v. Fla. Dep't

of Revenue, 687 So. 2d 893, 894 (Fla. 4th DCA 1997); see also Smith v. City of Fort Myers, 898 So. 2d 1177, 1178 (Fla. 2d DCA 2005)("In determining the sufficiency of a complaint for declaratory judgment, the question is whether the plaintiff is entitled to a declaration of rights, not whether the plaintiff will prevail in obtaining the decree he or she seeks.").

The Court finds that Count I of the Second Amended Complaint alleges sufficient facts to establish that a real and immediate actual, continuing controversy exists.  The parties do not agree as to the appropriate interpretation and application of the contract with respect to defendant's ability to unilaterally amend the refund provisions.  Defendant contends that it is allowed to unilaterally amend the parties' contract, while plaintiffs assert that defendant's interpretation is incorrect and renders the contract illusory and, thus, unenforceable.  No refund has been paid.

Defendant argues that no claim can be stated for a declaratory judgment because plaintiffs have an adequate legal remedy, that is, the breach of contract claim in Count II.  The Court concludes that the availability of an adequate legal remedy does not preclude a cause of action for a declaratory judgment.  The Declaratory Judgment Act states that a court may issue declaratory relief "whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Rule 57 provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is

otherwise appropriate." Fed. R. Civ. P. 57. See also Wacker v. Bisson, 348 F.2d 602, 607 (5th Cir. 1965)[1].

**B.   Count II: Breach of Contract**

Under Florida law, to state a cause of action for breach of contract the plaintiff must allege: (1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages. See Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 292 (Fla. 3d DCA 2007); Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 575 (Fla. 4th DCA 2006). Plaintiffs allege the existence of a valid contract, which contained the following refund policy:

> "One hundred percent (100%) of the membership deposit paid by a member will be refunded, without interest by the Club to the member within 30 days after providing written notice of resignation to the Club, without having to be placed on a waiting list to receive a refund."

(Doc. #70, ¶11). Plaintiffs allege that they performed their obligations under the contract by providing 30 days written notice of resignation to Shadow Wood, but that defendant materially breached the contract by failing and/or refusing to refund their membership deposit. (Doc. 70, ¶ 46.) Finally, plaintiffs allege that, as a result, they have been actually and directly damaged in the amount of $92,000. Defendant's reliance on various "club"

---

[1]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

cases does not establish at this stage of the proceedings that no relief is possible under the allegations and attached contract documents. Accordingly, the Court finds that a breach of contract claim under Florida law is sufficiently pled.

## C.  **Count III: Unjust Enrichment**

Plaintiffs also allege that defendant's refusal to return their membership deposit constitutes unjust enrichment. (Doc. #70, ¶¶ 50-53.)  Defendant argues that plaintiffs fail to state a claim for unjust enrichment because the relationship between plaintiffs and defendant is governed by an express contract.

The elements for unjust enrichment are that "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005)(citations omitted).  An unjust enrichment claim proceeds on the theory that no express agreement governs. Id. at 1227 n.10. "[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment."  Moynet v. Courtois, 8 So. 3d 377, 379 (Fla. 3d DCA 2009)(citing Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)).

In the instant case, there is an express contract between plaintiffs and defendant which addresses the refund of plaintiffs' membership deposit. However, "[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency" and "may plead alternative and inconsistent facts and remedies . . ." Allstate Ins. Co. v. James, 779 F.2d 1536, 1540-41 (11th Cir. 1986). See also Fed. R. Civ. P. 8(d)(2),(3). While plaintiffs cannot recover under both theories, they need not make an election at this stage of the proceedings. Count III of the Complaint will not be dismissed.

**D. Count IV: Violation of the Uniform Fraudulent Transfer Act**

Count IV alleges a violation of Florida's Uniform Fraudulent Transfer Act, which provides in pertinent part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105. Defendant asserts that plaintiffs have failed to plead a cause of action for violation of FUFTA and, alternatively, requests a more definite statement pursuant to Fed. R. Civ. P. 12(e). Plaintiffs respond that defendant has waived any objection to the FUFTA count by twice previously answering it and, in any case, maintain the count is sufficiently pled.

Plaintiffs are correct that defendants, while moving to dismiss other counts, previously answered the FUFTA count (Docs. ## 13, 27.) This does not, however, preclude them from filing a motion to dismiss when the count is reasserted in an amended complaint.

Under federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case. <u>Pintando v. Miami-Dade Hous. Agency</u>, 501 F.3d 1241, 1243 (11th Cir. 2007); <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1219 (11th Cir. 2007). "An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." <u>Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER</u>, 463 F.3d 1210, 1215 (11th Cir.2006) (citation and quotation omitted). <u>See also Fritz v. Standard Sec. Life Ins. Co.</u>, 676 F.2d 1356, 1358 (11th Cir. 1982)("Under the Federal Rules, an amended complaint supersedes the original complaint."). "That means that specific claims made against particular defendants in the original complaint are not preserved unless they are also set forth in the amended

complaint." Gross v. White, 340 Fed. Appx. 527, 534 (11th Cir. 2009). While a defendant may not file a motion to dismiss after answering a complaint which remains the operative pleading, Byrne v. Nezhat, 261 F.3d 1075, 1096 n.46 (11th Cir. 2001), defendants must plead anew to the Second Amended Complaint since the prior complaints no longer govern the case. There is no bar to a defendant filing a motion under Fed. R. Civ. P. 12(b) to the new operative pleading.

To plead a cause of action for violation of FUFTA, plaintiffs must allege: (1) they were creditors who were defrauded, (2) that defendant intended to commit the fraud, and (3) that the fraud involved a conveyance of property that could have been applicable to the payment of the debt due. Dillon v. Axxsys Int'l, Inc., 185 Fed. Appx. 823, 828-29 (11th Cir. 2006)(citing Nationsbank, N.A. v. Coastal Utils. Inc., 814 So.2d 1227, 1229 (Fla. 4th DCA 2002)). The Court finds that plaintiffs have sufficiently alleged that they are creditors. Section 726.102(4) defines a creditor as a person who has a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. Fla. Stat. §§ 726.102(3),(4). This definition is "extremely broad." Dillon, 185 Fed. Appx. at 830. Here, plaintiffs have alleged that they have a right to payment based on the refund policy. While this claim has not been reduced to a

judgment, it satisfies the broad definition of "creditor" contained in Fla. Stat. § 726.102(4).

The Court finds that plaintiffs have failed to sufficiently plead LBP intended to commit fraud. Violation of FUFTA can occur when a debtor actually intends to defraud its creditors (actual fraud) or when the debtor makes transfers without receiving reasonably equivalent value in exchange therefor (constructive fraud). Fla. Stat. § 726.105(1)(a),(b). Plaintiffs allege that on or about February 19, 2008, LBP granted a group of lenders the right to a security interest in virtually all available cash flows, and that the proceeds received from the lenders were used in whole or in part to make distributions to or otherwise benefit members and/or affiliates, not to benefit LBP. (Doc. #70, ¶¶ 27, 28, 57.) Plaintiffs further allege that defendant made the transfer without receiving reasonably equivalent value in exchange. (Doc. #70, ¶ 58.) All these allegations are made on "information and belief," and plaintiffs do not allege any facts in support of the allegations or why plaintiffs believe them to be true. Such allegations fail to provide any factual content that allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1268 (11th Cir. 2009)(citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Thus, without resort to the heightened pleading requirements of Fed. R. Civ. P. 9(b), the Court finds that plaintiffs' conclusory allegations are insufficient. See Ashcroft,

129 S. Ct. at 1940 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice)).

There appears to be additional pleading deficiencies. As relief, Count IV seeks to set aside each transfer. (Doc. #70, Count IV, "Wherefore" provision.) The state statute allows the Court only to avoid the transfer "to the extent necessary to satisfy the creditor's claim." Fla. Stat. § 726.108(1)(a). The complaint fails to identify any specific transfer which is to be avoided up to the $92,000 at issue. Additionally, while the complaint seeks to set aside the transfers, plaintiffs fail to sue the other party(ies) involved in the transfers. The Court cannot set aside a transfer when only one side of the transaction is before it as a party.

Thus, Count IV will be dismissed. Since there has been no prior opportunity to amend this Count, the Court will allow plaintiffs to amend Count IV if they choose to proceed on that Count.

Accordingly, it is so

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. #72) is **GRANTED IN PART and DENIED IN PART** to the extent that Count IV is dismissed without prejudice and with leave to amend. The Motion is otherwise **DENIED**.

2.   Plaintiffs shall file a third amended complaint **WITHIN TWENTY ONE (21) DAYS** of this Opinion and Order.  Only allegations relating to Count IV may be amended.

3.  The Pre Trial Conference currently scheduled for September 27, 2010 is **cancelled.**  An Amended Case Management and Scheduling Order will be entered contemporaneously to this Opinion and Order resetting deadlines.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of September, 2010.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record